IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                          CRIMINAL NO. 05-2 ERIE

KEITH ALLEN PROCTOR

CHANGE OF PLEA

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Thursday, March 9, 2006.

APPEARANCES:
        CHRISTIAN A. TRABOLD, Assistant United States
        Attorney, appearing on behalf of the Government.

        THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1                PROCEEDINGS

2

3              (Whereupon, the Change of Plea proceedings began at

4   11:00 a.m., on Thursday, March 9, 2006, in Courtroom C.)

5

6              THE COURT:  Mr. Proctor, I'm informed that you wish

7   to change the plea that you previously entered at Count One of

8   Indictment No. 05-2 Erie to a plea of guilty, is that correct,

9   sir?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Before accepting your guilty plea, there

12   are a number of questions I will ask you to make certain that

13   it is a valid plea.  If you do not understand any question,

14   please tell me and I will explain it to you.  If at any time

15   you wish to consult with your attorney, please tell me that and

16   I will give you the opportunity to consult.  I give you these

17   instructions because it is essential to a valid plea that you

18   understand every question before you answer it.

19          Would you please administer the oath.

20          DEPUTY CLERK:  Please raise your right hand.

21          (Whereupon, the Defendant, KEITH ALLEN PROCTOR, was

22   sworn.)

23          THE COURT:  Do you understand that now that you have

24   been sworn, your answers to my questions are subject to the

25   penalties of perjury or of making a false statement if you do

3

1    not answer truthfully?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Would you please tell me your full name?

4           THE DEFENDANT:  Keith Allen Proctor.

5           THE COURT:  How old are you, sir?

6           THE DEFENDANT:  Thirty-five.

7           THE COURT:  How far did you go in school?

8        THE DEFENDANT:  8th grade.

9        THE COURT:  Are you able to communicate in English?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Has that been your experience, Mr.

12  Patton?

13        MR. PATTON:  Yes, sir.

14        THE COURT:  Have you taken any drugs or medication

15  or have you drunk any alcoholic beverages in the past 24 hours?

16        THE DEFENDANT:  Just regular medicine.

17        MR. PATTON:  Your Honor, Mr. Proctor is on several

18  medications for his physical ailments, also some for mental

19  health.

20        THE COURT:  Could you rattle those medications off?

21        MR. PATTON:  The first is Strattera, which is for

22  attention deficit, hyperactivity disorder.  Norvasc, which is a

23  high blood pressure medication.  Lipitor, for high cholesterol.

24  HCTZ, which is another blood pressure medication.  Ranitidine,

25  which is a medication for acid reflux disorder.  Effexor, which

4

1  is a mood stabilizer, and Trazadone.

2          THE COURT:  Now, you're taking all of those

3   medications now, is that right, Mr. Proctor?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Even though you're taking all those

6   medications now, are you still able to think clearly and do you

7   understand what's happening here today?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  And I take it since you're

10  taking all those medications, you're presently under the care

11  of a physician or a psychiatrist?

12         THE DEFENDANT:  Yes, both.

13         THE COURT:  Both.  Have you recently been

14  hospitalized or treated for narcotic addiction?

15         THE DEFENDANT:  No.

16         THE COURT:  Do you understand what's happening here

17  today?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Does either counsel have any doubt about

20  the competence of this defendant to plead guilty at this time,

21  Mr. Trabold?

22         MR. TRABOLD:  No, your Honor.

23         THE COURT:  Mr. Patton?

24          MR. PATTON:  No, sir.

25          THE COURT:  I find him competent to plead.  Now, do

5

1   you have a lawyer with you here today?

2          THE DEFENDANT:  Yes.

3          THE COURT:  What is his name?

4          THE DEFENDANT:  Tom Patton.

5          THE COURT:  Have you had a sufficient opportunity to

6   discuss your case with him?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And are you happy with the work that

9   he's done for you?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that if you continue

12   to plead not guilty and do not change your plea, you would have

13   the right to be assisted by an attorney at the trial of the

14   charge against you?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And do you understand that if you did

17   not enter a guilty plea and if you qualified financially, you

18    would be entitled to be assisted by an attorney at no cost to

19    you at every phase of the processing of these charges against

20    you?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Do you understand that if you did not

23    plead guilty and that if there were a trial, under the

24    Constitution and laws of the United States, you would be

25    entitled to a speedy trial by a judge and jury on the charge?

6

1        THE DEFENDANT:  Yes.

2        THE COURT:  Do you understand that if there were a

3    trial, the government would be required to prove your guilt by

4    competent evidence and beyond a reasonable doubt before you

5    could be found to be guilty?

6        THE DEFENDANT:  Yes.

7        THE COURT:  Do you understand that if there were a

8    trial, you would not have to prove that you were innocent?

9        THE DEFENDANT:  Yes.

10        THE COURT:  Do you understand that if there were a

11    trial, the jury would have to be unanimous in order to find you

12  guilty of the charge against you?

13      THE DEFENDANT:  Yes.

14      THE COURT:  Do you understand that if there were a

15  trial, you would have the right to participate in the selection

16  of the jury; that you would have the right to strike or

17  eliminate any prospective juror if it was demonstrated that the

18  juror would be unable to render a fair and impartial verdict;

19  and that you would have the right to strike or eliminate ten

20  jurors from the jury and one alternate, without giving any

21  reason at all for so doing?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Do you understand that if there were a

24  trial, the witnesses for the government would have to come to

25  court and they would have to testify in your presence?


7


1      THE DEFENDANT:  Yes.

2      THE COURT:  Do you understand that if there were a

3  trial, your counsel could cross-examine the witnesses for the

4  government, object to evidence offered by the government and

5  then offer evidence on your behalf?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that if there were a

8   trial, the government would have to pay witness fees to

9   witnesses you wished to call on your behalf, if you qualified

10   as being financially unable to pay such witness fees?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that if there were a

13   trial, you would have the right to testify if you chose to?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that if there were a

16   trial, you would have the right not to testify and that no

17   inference or suggestion of guilt could be drawn from the fact

18   that you did not testify?

19          THE DEFENDANT:  Yes.

20          THE COURT:  If you plead guilty and I accept your

21   plea, do you understand that you will waive your right to a

22   trial and the other rights which I have mentioned to you, that

23   there will be no trial, and that I will enter a judgment of

24   guilt and sentence you on the basis of your guilty plea after

25   considering a presentence report?

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you plead guilty, do you understand

3   that you will also have to waive your right not to incriminate

4   yourself, because I will ask you questions about what you did

5   in order to satisfy myself that you are guilty as charged and

6   that you will have to acknowledge your guilt?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now that I have mentioned your rights to

9   you, do you still wish to plead guilty?

10          THE DEFENDANT:  Yes.

11          THE COURT:  What count is he pleading to?

12          MR. TRABOLD:  All three counts, your Honor.

13          THE COURT:  Have you received a copy of the

14   Indictment naming you and have you discussed with your counsel

15   the charges in the Indictment to which you are pleading guilty

16   today?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Have you carefully read each of the

19   counts in the Indictment?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And have you discussed those with your

22  counsel?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand the charges?

25          THE DEFENDANT:  Yes.


9


1          THE COURT:  Mr. Patton, have you discussed the

2  charges in the Indictment with your client?

3          MR. PATTON:  I have.

4          THE COURT:  Are you satisfied that he understands

5  the Indictment?

6          MR. PATTON:  Yes, sir.

7          THE COURT:  Do you waive a reading of the Indictment

8  in the interest of time?

9          MR. PATTON:  Yes, sir.

10          THE COURT:  All right.  Now, do you understand that

11  as to Count One, in order for the crime of transportation of

12  material depicting the sexual exploitation of a minor, in

13  violation of Title 18, United States Code, Section 2252(a)(1)

14  to be established, the government must prove all of the

15  following essential elements beyond a reasonable doubt.

16      That the defendant knowingly transported or shipped

17  a visual depiction of a minor in interstate or foreign

18  commerce, by any means, including by computer or through the

19  United States mail.

20      That the production of such visual depiction

21  involved the use of a minor engaging in sexually explicit

22  conduct, as those terms are defined in Title 18, United States

23  Code, Section 2256, and the defendant knew the visual depiction

24  was of a minor.

25      That the visual depiction is of such conduct.


10


1      Do you understand the elements as to Count One?

2      THE DEFENDANT:  Yes.

3      THE COURT:  Now, as to Count Two, in order for the

4  crime of receipt of material depicting the sexual exploitation

5  of a minor, in violation of Title 18, United States Code,

6  Section 2252(a)(2) to be established, the government must prove

7  all of the following essential elements beyond a reasonable

8  doubt.

9          That the defendant knowingly received a visual

10   depiction of a minor in interstate or foreign commerce, by any

11   means, including by computer or through the United States mail.

12          That the production of such visual depiction

13   involved the use of a minor engaging in sexually explicit

14   conduct, as those terms are defined in Title 18, United States

15   Code, Section 2256; and the defendant knew the visual depiction

16   was of a minor.

17          That the visual depiction is of such conduct.

18          Do you understand the elements as to Count Two?

19          THE DEFENDANT:  Yes.

20          THE COURT:  As to Count Three, in order for the

21   crime of possession of material depicting the sexual

22   exploitation of a minor, in violation of Title 18, United

23   States Code, Section 2252(a)(4)(B) to be established, the

24   government must prove all of the following essential elements

25   beyond a reasonable doubt.


11


1          That the defendant knowingly possessed one or more

2   items, which contained a visual depiction of a minor engaging

3   in sexually explicit conduct.

4          That the item which contained the visual depiction

5   had been mailed, transported or shipped in interstate commerce,

6   or had been produced using materials which had been mailed or

7   transported or shipped in interstate commerce.

8          That the production of the visual depiction involved

9   the use of a minor engaging in sexually explicit conduct, as

10   those terms are defined in Title 18, United States Code,

11   Section 2256.

12          Do you understand the elements as to that count?

13          THE DEFENDANT:  Yes.

14          MR. PATTON:  Your Honor, to save some time on the

15   penalties, Counts One and Two are identical.

16          THE COURT:  I was just about to ask that.  Do you

17   understand that the maximum penalties as to Counts One and Two

18   are as follows:

19          Imprisonment of not less than five years and not

20   more than 20 years.  But if the defendant has a prior

21   conviction under Title 18, United States Code, Chapter 110,

22   Chapter 71, Chapter 109A, Chapter 117 or under Section 920 of

23   Title 10, or under the laws of any state relating to aggravated

24   sexual abuse, sexual abuse, or abusive sexual conduct involving

25   a minor or ward, or the production, possession, receipt,

12

1   mailing, sale, distribution, shipment or transportation of

2   child pornography, such person shall be fined under this title

3   and imprisoned not less than 15 years nor more than 40 years.

4          A fine of $250,000.

5          A term of supervised release of up to life.

6          Any or all of the above.

7          As well as a mandatory special assessment of $100.

8          In addition, restitution may be required in this

9   case as to Counts One, Two and Three, together with any other

10   authorized penalty.

11          Do you understand the maximum penalties then with

12   respect to Counts One and Two?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that the maximum

15   penalty as to Count Three is imprisonment of not more than 10

16   years; but if such person has a prior conviction under Title

17   18, et seq., or under the laws of any state relating to

18   aggravated sexual abuse, sexual abuse, or abusive sexual

19  conduct involving a minor or ward, or the production,

20  possession, receipt, making, sale, distribution, shipment or

21  transportation of child pornography, such person shall be fined

22  under this title and imprisoned not less than 10 years nor more

23  than 20 years.

24       A fine of $250,000.

25       A term of supervised release of up to life.


13


1        Any or all of the above.

2        A mandatory special assessment of $100.

3        As well as the previously-discussed restitution,

4  together with any authorized penalty.

5        Do you understand the maximum penalties insofar as

6  Count Three is concerned?

7        THE DEFENDANT:  Yes.

8        THE COURT:  Now, has anybody made any threat to you

9  or anyone else that has forced you in any way to plead guilty

10  today?

11       THE DEFENDANT:  No.

12       THE COURT:  Has there been a plea agreement, Mr.

13  Trabold?

14       MR. TRABOLD:  No, your Honor.

15       THE COURT:  Now, do you understand that the offense

16  to which you are pleading guilty today is a felony offense;

17  that if your plea is accepted, you will be adjudged guilty of

18  that offense and that such adjudication may deprive you of

19  valuable civil rights, such as the right to vote, hold public

20  office, serve on a jury and the right to possess any type of

21  firearm; do you understand that?

22       THE DEFENDANT:  Yes.

23       THE COURT:  Under the Sentencing Reform Act of 1984,

24  the United States Sentencing Commission has issued guidelines

25  for judges to follow in determining sentences in criminal cases

14

1  for offenses occurring after November 1st of 1987.  Have you

2  and Mr. Patton talked about how the Sentencing Guidelines might

3  apply to your case, and the fact that the guidelines are now

4  advisory by virtue of recent Supreme Court decisions?

5       THE DEFENDANT:  Yes.

6       THE COURT:  Do you understand that I will not be

7    able to determine the advisory guideline sentence for your case

8    until after the presentence report has been completed and you

9    and the government have had an opportunity to challenge the

10   facts reported by the probation officer?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And do you understand that after it has

13   been determined what guideline sentence applies to a case, the

14   judge has the authority in some circumstances to impose a

15   sentence that is more severe or less severe than that called

16   for by the Sentencing Guidelines?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that parole has been

19   abolished, and that if you are sentenced to a term of

20   imprisonment, you will not be released on parole?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that if the sentence

23   is more severe than you expected it to be, you will still be

24   bound by your guilty plea and you will have no right to

25   withdraw it?

15

1    THE DEFENDANT:  Yes.

2    THE COURT:  Except for your discussions with Mr.

3 Patton about the Sentencing Guidelines, has anybody made any

4 prediction or promise to you about what your sentence will be?

5    THE DEFENDANT:  No.

6    THE COURT:  Has anything I said here today suggested

7 to you what your actual sentence will be?

8    THE DEFENDANT:  No.

9    THE COURT:  Have you been instructed by your

10 counsel, by government counsel, or by anybody else to respond

11 untruthfully to any question about a promised sentence?

12    THE DEFENDANT:  No.

13    THE COURT:  Did you, as charged in Counts One, Two

14 and Three, and as previously reviewed with you by me, commit

15 the offenses as charged?

16    THE DEFENDANT:  Yes.

17    THE COURT:  Mr. Trabold, what would be the

18 government's proof here?

19    MR. TRABOLD:  Your Honor, in 2004 the FBI, along

20 with other federal law enforcement agencies, began to receive

21 information that what is commonly referred to as peer-to-peer

22  software was being used to transmit and receive images of child

23  pornography off of the Internet.  Peer-to-peer software,

24  essentially, is a file sharing system on the Internet where

25  people can download images of child pornography and other

16

1  things that are not illegal.  Not essentially off of the

2  Internet, but directly off of another user who has this

3  peer-to-peer software hard drive.  Instead of going on to a

4  Web site on the Internet, peer-to-peer software allows you the

5  ability to download images directly from another person that's

6  on the network's hard drive.  The reason people are interested

7  in doing this is because the software allows you to download

8  multiple images at the same time because it allows images to

9  come from multiple different hard drives at the same time,

10  essentially, speeding the ability of the person to download

11  images onto their own hard drive.

12          Along these lines, on May 12th of 2004, FBI Special

13  Agent Gruninger, who's a special agent in Las Vegas operating

14  in an undercover capacity, entered the search term "pedo", in

15  the hopes that he would receive information from people on this

16  peer-to-peer software connection, indicative of child

17  pornography.  He did in fact receive information, multiple hits

18  on his search, under the search term "pedo."

19        Subsequent to that, FBI Special Agent Ma in Houston,

20  Texas, on May 18, 2004, essentially did the exact same thing.

21  After those two special agents did these search terms and

22  received these peer-to-peer images onto their computer, they

23  then run further software that allows them to pinpoint the

24  Internet Protocol or IP address for every computer that sent

25  images of child pornography to the undercover officers'

17

1  computers.  They then compile those Internet Protocol addresses

2  and issue a grand jury or FBI administrative subpoenas to the

3  Internet service providers to determine who these Internet

4  Protocol addresses come back to.

5        The subpoenas resulted in the determination being

6  made that this defendant was one of the people that sent to

7  these FBI special agents images of child pornography across

8  this peer-to-peer software connection.

9        Based on that, on August 6th of 2004, the FBI

10   executed a search warrant at Mr. Proctor's home and seized his

11   computer.  A forensic computer examination conducted by the

12   Pennsylvania State Police reveals approximately 300 to 600

13   images of child pornography.  Which includes children engaged

14   in the lascivious exhibition of their genitalia and/or multiple

15   images of young to very young children actually engaged in

16   sexual activity.

17          Beyond seizing Mr. Proctor's computer, the FBI

18   seized a variety of different paperwork laying in the immediate

19   proximity of his computer.  This paperwork contained notations

20   indicative of someone searching for this child pornography.

21   There were various notes, including the following:

22   www.boys-films.com., Gay-boys, hr-my boys, PTHC.BoyAction,

23   erection-11.com.  And then notes indicating preteen boys and

24   pedo guy.

25          Beyond that, your Honor, a review of the images


18


1   themselves indicates at least one image that could be fairly

2   characterized as sadomasochistic, in the sense it depicts a

3   minor clearly under the age of 10 strapped to a metal bar in

4  the shape of a "T", where the minor's arms are strapped to the

5  top of the bar, are tied to the top of the bar and her legs

6  laid out somewhat in spread-eagle fashion, each leg is strapped

7  at either end to another connecting bar.

8        Beyond that, the images, as I indicated, clearly

9  depict images of children that are prepubescent.  And all of

10  the images, obviously, were transmitted in interstate commerce

11  across this peer-to-peer relationship or via the Internet.

12        Finally, the forensic exam reveals that, as it

13  relates to the transportation charge in the Indictment, that

14  Mr. Proctor was engaging not only in this peer-to-peer

15  relationship, but he was mailing images, he was e-mailing other

16  people and attaching to those e-mails images of child

17  pornography.  And then getting back from those individuals, as

18  evidenced by the fact that there were numerous child

19  pornography images saved on his hard drive in the e-mail

20  portion of his hard drive as incoming mail.  He was e-mailing

21  out child pornography and getting child pornography back via

22  e-mails, as evidenced by the forensic exam.  That would be the

23  nature of the government's evidence.

24        THE COURT:  All right.  Mr. Proctor, you just heard

25  what Mr. Trabold has said by way of a summary, do you agree

19

1  with everything he said?

2      MR. PATTON:  Your Honor, I just wanted to put on the

3  record some qualifications -- some of the specific items that

4  Mr. Trabold just listed are issues that don't form the actual

5  elements of the offenses, are potential sentencing enhancements

6  under the Sentencing Guidelines.  Specifically, as to the

7  number of images that were on the hard drive, that's not an

8  element of the offense.  While it's likely that by the time of

9  sentencing we may be able to come to an agreement as to the

10  number of images, I don't believe it's necessary that Mr.

11  Proctor has to agree at this point in time with that.  That,

12  also, I believe goes to whether or not any images are

13  prepubescent of minors.  Whether any of the images are

14  sadomasochistic.  As to distribution, as to whether or not that

15  distribution was made with the expectation of getting anything

16  in return, that will be a sentencing issue, but it's not

17  something that needs to be admitted to here to meet the

18  elements of the distribution offense.  So with those

19  qualifications.

20          THE COURT:  Let me hear it from him.  Mr. Proctor,

21   you just heard what your lawyer said.  Aside from that

22   information, which may be the subject at the sentencing

23   hearing, do you agree with everything that Mr. Trabold said?

24          THE DEFENDANT:  Can I ask my lawyer a question?

25          THE COURT:  Sure.


20


1          (Discussion held off the record between the

2   Defendant and Defense Counsel.)

3          THE DEFENDANT:  Yes, I agree.

4          THE COURT:  All right.  Do you still wish to plead

5   guilty then, sir?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Is it your advice he do so, Mr. Patton?

8          MR. PATTON:  Yes, sir.

9          THE COURT:  Because you knowledge that you are in

10   fact guilty as charged in Counts One, Two and Three, because

11   you know about your right to a trial, and because you know what

12   the maximum possible penalties are and because you are

13   voluntarily pleading guilty, I will accept your guilty plea and

14  enter a judgment of guilty on your plea to Counts One, Two and

15  Three of Indictment No. 05-2 Erie.

16      It is therefore the finding of the court in the case

17  of United States v. Keith Allen Proctor, that the defendant is

18  fully competent and capable of entering an informed plea, and

19  that his plea of guilty is a knowing and voluntary plea

20  supported by an independent basis in fact containing each of

21  the essential elements of the offense and that, therefore, the

22  plea is accepted and the defendant is now adjudged guilty of

23  the charges.  Would you please have Mr. Proctor and his counsel

24  sign the change of plea.

25      (Whereupon, the Change of Plea was executed by the


21


1  Defendant and Defense Counsel.)

2      THE COURT:  Now, a presentence report is going to be

3  prepared by the probation officer, and it is in your best

4  interests to cooperate with the probation officer in furnishing

5  information for that report, because that report is going to be

6  important in my decision about what your sentence will be.  You

7  and your counsel will have a right and will have an opportunity

8  to examine the report before sentencing.

9        The disposition of sentencing in this case is set

10  for June 13th at 10 a.m.  All right.

11        MR. TRABOLD:  Can I just raise an issue.  Mr.

12  Proctor is out on bond with the general conditions that he not

13  engage in Internet activity or use a computer, have contact

14  with minors.  I'm not asking that you detain him, but I am

15  asking that you impose some more stringent bond restrictions on

16  him now because he's entered a guilty plea to obviously three

17  felonies.

18        THE COURT:  What is the government requesting?

19        MR. TRABOLD:  I'm requesting you place him on home

20  detention with electronic monitoring.  I don't know if that can

21  be done by Pretrial Services, but that is our request.

22        THE COURT:  Just home detention?

23        MR. TRABOLD:  With the electronic monitor.

24        MR. PATTON:  Your Honor, Mr. Proctor has been on

25  bond since January of 2005, without there being any indications

22

1  from Pretrial Services that there's been any problem at all.

2   Mr. Proctor's children have been taken out of his home by the

3   Office of Children and Youth.  Actually, his parental rights

4   have been terminated.

5          THE COURT:  Is he working?

6          MR. PATTON:  He is not.  His medical conditions

7   severely limit the work that he can do.  I would just submit, I

8   understand he pled guilty, he's known that this has been coming

9   and he hasn't engaged in any type of inappropriate behavior.

10         THE COURT:  You're concerned about flight?

11         MR. TRABOLD:  Your Honor, the posture of pretrial

12  release is that you are dealing with an individual that's

13  presumed innocent.  And now we're not dealing with an

14  individual that's presumed innocent, we're dealing with an

15  individual that has now pled guilty to what would amount to be

16  three crimes against children.  And it certainly, to my mind,

17  brings up some greater concerns with regard to the issue of

18  flight.  In essence, now that you're talking about a person

19  that is not presumed innocent and has pled guilty and is

20  obviously now awaiting sentencing, which is a completely

21  different posture than when you're just out on bond and your

22  case hasn't been resolved.

23         MR. PATTON:  Your Honor, Mr. Proctor does drive his

24  wife to work and back daily.  She does not drive, so he drives

25  her back and forth.  So even if you were contemplating home


23


1  detention --

2         THE COURT:  As with any home detention, you usually

3  go to work, do certain things.  What would you be

4  contemplating, things along those lines?

5         MR. TRABOLD:  The ordinary and reasonable exceptions

6  as they relate to home detention and electronic monitoring, I

7  don't have an objection to.  My concern is, other than the

8  general prohibitions to stay away from minors, stay off the

9  Internet, there really isn't all that much supervision of this

10  defendant, which is of great concern to me.  Especially now in

11  light of what he just pled guilty to.

12         THE COURT:  Let me ask you, can you do that?

13         PRETRIAL SERVICES OFFICER:  That wouldn't be

14  impossible to do.  We would have to contact officers in the

15  Pittsburgh office to set up the home confinement with

16  electronic monitoring.

17        THE COURT:  I would be inclined to do that with the

18    proviso that he's not locked down in his house.  I assume

19    Pretrial Services or somebody has a list of acceptable reasons,

20    for work, and this instance taking this lady to work and other

21    typical terms and conditions?

22        PRETRIAL SERVICES OFFICER:  Yes, the officers who

23    are responsible for his case, they would give him a window of

24    time to do whatever he needs to do.

25        THE COURT:  Then it could be requested on an item by

24

1    item basis?

2        PRETRIAL SERVICES OFFICER:  Yes, as the

3    circumstances require.

4        THE COURT:  Did you want to say something?

5        MR. PATTON:  Your Honor, if you're inclined to do

6    that, generally, there's three levels of confinement.  One is

7    just a curfew.  Intermediate is home detention, which allows

8    the person to leave for work, medical appointments, church and

9    other pre-approved activities.  Then there's a home

10    incarceration, which is extremely limited, that basically is

11  only like doctor's appointments --

12        THE COURT:  Funerals?

13        MR. PATTON:  Right.

14        MR. PATTON:  The home incarceration is extremely

15  limited.  So I know Pretrial Services distinguishes --

16        THE COURT:  He was talking about home confinement --

17        MR. PATTON:  The intermediate.

18        MR. TRABOLD:  That's acceptable to the government.

19        THE COURT:  With electronic monitoring.  All right,

20  we're in recess.

21

22        (Whereupon, at 11:29 a.m., the Change of Plea

23  proceedings were concluded.)

24

25              - - -


                                25



1              C E R T I F I C A T E

2

3

4

5        I, Ronald J. Bench, certify that the foregoing is a

6    correct transcript from the record of proceedings in the

7    above-entitled matter.

8

9

10

11

12    _____

13    Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25