IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

v.                          CRIMINAL NO. 05-2 ERIE

KEITH ALLEN PROCTOR


SENTENCING



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Wednesday, January 10, 2007.



APPEARANCES:
CHRISTIAN A. TRABOLD, Assistant United States
Attorney, appearing on behalf of the Government.

THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1           P R O C E E D I N G S

2

3           (Whereupon, the Sentencing proceedings began at

4   1:30 p.m., on Wednesday, January 10, 2007, in Courtroom C.)

5

6           THE COURT:  This is the time set for sentencing in

7   the case of United States v. Keith Allen Proctor.  As a

8   preliminary matter, I note that there have been no objections

9   filed to the guideline computations made by the probation

10  officer on behalf of either the defendant or the United States;

11  is that right, Mr. Trabold?

12          MR. TRABOLD:  That's correct, your Honor.

13          THE COURT:  Mr. Patton, no objections to the

file:///A|/PROCTSEN.TXT

14  computations?

15      MR. PATTON:  That is correct, your Honor, as to the

16  computations agreed to by the parties.

17      THE COURT:  All right.  That having been said, I

18  make the following findings.  The total offense level

19  applicable here is 30.  With a criminal history category of

20  III.  The statutory provision as to custody at each of Counts

21  One and Two not less than 5 to 20 years imprisonment.  At Count

22  Three not more than 10 years imprisonment.  The guideline

23  provisions 121 to 151 months.  With respect to the statute,

24  probation is ineligible at each of Counts One, Two and Three.

25  Similarly, ineligible under the guidelines.  The statutory

3

1  provision as to supervised release at each of Counts One, Two

2  and Three, any term of years or life.  Guideline provisions at

3  each of Counts One, Two and Three, life.  The statutory

4  provision as to a fine at each of Counts One, Two and Three,

5  $250,000, for a total of $750,000.  The guideline provisions

6  are $15,000 to $150,000.  Restitution is inapplicable under

7  both the statute and the guidelines.  And a special assessment

8   of $100 applies with respect to both the statute and the

9   guidelines.

10      Mr. Trabold, I've been informed that there has been

11  an agreement between the government and the defendant as to the

12  sentence in this case.  Would you put the terms of that

13  agreement on the record?

14      MR. TRABOLD:  Your Honor, the terms of the

15  agreement, as I understand them, are Mr. Proctor and the

16  government have agreed to a sentence of 198 months

17  incarceration, and really that's the only term of the

18  agreement.  All other issues, with regard to supervised release

19  or any other sentencing issue, has been left open and each

20  party is able to argue whatever position they want with regard

21  to that.

22      THE COURT:  But the agreement is then related solely

23  to the period of incarceration being 198 months.  There's no

24  agreement with respect to any other aspect of the sentence.

25  And just to round it out, as I understand it, the 198 month

4

1   sentence is based upon an agreement between the United States

2   and the defendant that a three-level upward departure is

3   appropriate pursuant to United States Sentencing Guideline

4   2G2.2, Application Note 2, is that correct?

5        MR. TRABOLD:  Well, I think the way you can arrive

6   at the sentence, just at a 198 months, even under the

7   guidelines, is this.  The guideline calculated by the probation

8   department contemplates an increase in the base offense level

9   for Mr. Proctor's distribution of images of child pornography.

10  I believe under the guideline it calculated a two-point

11  increase for that.  The agreement that we've reached with Mr.

12  Proctor and, obviously, defense counsel, is that he will

13  receive another two points for distribution, for the

14  expectation of the return of a thing of value, which would make

15  the distribution enhancement to the base offense level of four

16  total points instead of two.  He would then receive another

17  enhancement of three offense levels for engaging in sexual

18  activities with minors that may not rise to the level of a

19  pattern of activity, but as contemplated under the guideline

20  application notes, an increase may be warranted even if it's

21  not the five-level increase, if there is some level of activity

22  that does not justify the five-level activity.  And in this

23  case the agreement is that the increase, instead of being five

24  levels for that aspect, it should be three.

25        THE COURT:  But as a practical matter, it isn't of

5

1  any particular moment to the parties how the 198 month sentence

2  is justified, as long as there is a 198 month sentence, is that

3  right?

4        MR. TRABOLD:  That is correct.

5        THE COURT:  Mr. Patton, is there something you want

6  to add to this?

7        MR. PATTON:  Your Honor, I would just say that the

8  guideline calculations that you just read --

9        THE COURT:  Yes, sir.

10        MR. PATTON:  Incorporated Mr. Proctor receiving a

11  five-level increase for distribution with the expectation of

12  something in return.  That's how you get to 30.  As originally

13  written --

14        THE COURT:  It was a 27.

15        MR. PATTON:  Correct.

16        THE COURT:  And just to round this out, as I recall,

17  the probation officer had originally attributed two points, the

18  agreement between the parties -- the agreement which drives the

19  total offense level of 30, is an agreement between the

20  government and the defendant that a five-level enhancement is

21  appropriate, is that correct?

22      MR. PATTON:  That is correct.

23      THE COURT:  All right.  I noticed when I came out

24  here I grabbed my wrong note pad, you don't have to get up, I'm

25  going to run and get my other notes, then we'll complete the

6

1  sentencing.

2      (Whereupon, a brief recess was taken.)

3      MR. PATTON:  Your Honor, there is one other aspect

4  that I want to clarify.  In that the 198 months and reaching

5  that by departing upward, is based on Mr. Proctor's prior

6  conviction for indecent assault and corruption of minors.

7  But is not based on any of the allegations regarding --

8      THE COURT:  I understand that.  The agreement is

9  based on that conviction for indecent assault and the

10  enhancement -- I'm going to use the term upward departure,

11  which is probably inappropriate in post Booker, but the

12  increased sentence is driven in part by Application Note 2,

13  is that correct?

14        MR. PATTON:  Yes, that is correct.

15        THE COURT:  Given this change, I'm going to have to

16  ask Mr. Proctor some questions now, would you please have him

17  come up to the podium.  Would you swear him in, please.

18        DEPUTY CLERK:  Would you please raise your right

19  hand.

20        (Whereupon, the Defendant, KEITH ALLEN PROCTOR, was

21  sworn.)

22        THE COURT:  Mr. Proctor, I'm going to ask that you

23  speak directly into the microphone and keep your voice up.

24  Given the agreement that your counsel and yourself and the

25  government have entered into, it's required that I ask you some


                                7


1  questions pursuant to United States Sentencing Guideline 6B1.1

2  and Rule 11.  Because I view this as essentially, either

3  counsel can correct me if I'm wrong, as an oral amendment or

4  addition to the plea agreement; is that how you view it?

5          MR. TRABOLD:  Yes, I agree with the court that you

6   need to get some agreement from Mr. Proctor on the record.

7          THE COURT:  All right.  Mr. Proctor, you've just

8   heard what Mr. Trabold has said and what Mr. Patton has said

9   concerning the agreement that has been entered into concerning

10   your period of incarceration.  Do you agree that what both Mr.

11   Trabold and Mr. Patton said accurately describes what you have

12   agreed to?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  And is my understanding

15   correct, that you are in full agreement with the agreement as

16   described by Mr. Patton and the government?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And have you had a full opportunity to

19   discuss the terms and conditions of that agreement with your

20   counsel?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  Then while I'm not bound by

23   the terms of the agreement and could reject it, I find, for the

24   reasons that I will put forth on the record presently, that the

25   agreement as to the term of incarceration is appropriate.

8

1   You can take a seat, sir.  The record should reflect that I

2   received this afternoon three pieces of correspondence written

3   on Mr. Proctor's behalf, which I have read and reviewed.  Mr.

4   Patton.

5        MR. PATTON:  Your Honor, obviously the length of the

6   term of incarceration has already been dealt with.  And your

7   Honor has agreed that this agreement between the parties is an

8   appropriate sentence of imprisonment.

9        The next issue is the length of any term of

10  supervised release.  The statute allows you to apply a term of

11  supervised release for any years or up to life.  I would submit

12  that a term of supervised release of life is not necessary in

13  this case.  As you have done in other cases of this nature,

14  that a term of supervised release of seven years or something

15  in that area would be appropriate to monitor Mr. Proctor.  He

16  is going to be spending approximately 16-and-a-half years in

17  prison, and if you put him on supervised release for seven

18  years in addition to that, you're talking about a total of 23

19  years either incarcerated or under the supervision of the

20  United States Probation Office.  And I would submit to you that

21   if Mr. Proctor successfully completes seven years of supervised

22   release, he will have demonstrated that he is not a danger to

23   the community and that he would not need to be on any further

24   term of supervised release.

25          I believe that the presentence report makes clear

9

1   that Mr. Proctor does not have the ability to pay a fine, I

2   would ask that you waive a fine in this case.

3          I would ask that you recommend to the Bureau of

4   Prisons that Mr. Proctor be housed as close to the Erie area as

5   possible so that he can be as close to his wife as possible.

6          THE COURT:  I'll make that recommendation.

7          MR. PATTON:  Your Honor, there is going to be a

8   disagreement among the parties as to whether or not Mr. Proctor

9   should be allowed to self-report.

10          THE COURT:  Why don't we do it this way.  Let me

11   hear from the government on that first, then I'll hear from

12   you.

13          MR. PATTON:  All right.

14          THE COURT:  Does your client have anything he would

15  like to say?

16      MR. PATTON:  Yes, judge.

17      THE DEFENDANT:  I'd like to apologize to the court

18  for my actions.  I'm sorry for my actions, and I will never do

19  it again.

20      THE COURT:  All right.  Thank you, Mr. Proctor.

21  All right, Mr. Trabold.

22      MR. TRABOLD:  Your Honor, I agree with counsel that

23  my comments that I'm about to make are really just obviously

24  directed towards the length of his supervised release.  It's

25  the government's position that in light of the circumstances of


10


1  this case, which are obviously highly troubling and highly

2  significant, you should impose a term of supervised release of

3  life on Mr. Proctor for a variety of different reasons.

4      First, as the presentence report indicates, Mr.

5  Proctor's background is highly troubled.  He has a prior child

6  sex conviction against a 13-year-old victim.  He has a prior

7  corruption of minors conviction involving furnishing alcohol to

8  a minor.  And a prior disorderly conduct conviction where the

9   basis for the conviction was his furnishing of alcohol to a

10  17-year-old.  That, on top of the conviction we're here on

11  today, indicates an individual that obviously has a keen sexual

12  interest in children that he's having a great deal of

13  difficulty getting under control.

14        We discussed, obviously, the guidelines and the

15  application of the guidelines to Mr. Proctor's case.  But

16  what's troubling about the application of the guidelines to Mr.

17  Proctor is he essentially qualifies for every enhancement in

18  offense level contemplated in the guidelines.  He used a

19  computer during the commission of the offense.  He distributed

20  images of child pornography with the expectation of a return of

21  like images.  His images involve multiple images of

22  prepubescent minors, some of the images are of extremely young

23  children.  He qualifies and, in fact, the presentence report

24  accords him the enhancement for having images involving sadism

25  or sadomasochism.  In fact, the one image that he has, that is


11


1   specifically referenced in the presentence report, is of a

2   young child naked in a bondage fixture.

3          Finally, he has been accorded under the guidelines

4     the enhancement for having 150 to 300 images.  So it's not as

5     if Mr. Proctor's conduct in this case is limited to a small

6     number of images.

7          The other thing I want to make the court aware of,

8     which I've marked as Government Exhibit No. 1, which I've

9     provided to counsel, is a document that was found on the hard

10    drive of Mr. Proctor's computer.  Which, for lack of a better

11    term, I'll call the Boy Lover manifesto.  This is a document

12    that in my experience I have, law enforcement investigators

13    have found in a number of these child pornography cases on the

14    hard drives of people that have been convicted before your

15    Honor of child pornography related offenses.  And, essentially,

16    what it amounts to is an explanation or justification for why

17    an adult male would be interested in having sexual relations

18    with boys.  And it goes on at length to talk about how

19    pedophilia or calling somebody a child molester isn't really

20    appropriate and why in ancient Greece this type of activity is

21    appropriate.  I want to introduce that as an exhibit and make

22    the court aware of it simply because it bears on his

23    willingness and the likelihood that he will rehabilitate

24  himself.  That document indicates to me that Mr. Proctor

25  doesn't really think there's anything all that wrong with the


12


1  conduct that he engaged in this case and in the past, and that

2  bears on the length of his supervised release.  Because if he's

3  trying to find justifications for his behavior and believes his

4  behavior is justified, then it's troubling to me to some day

5  let him out in a situation where he's not going to be under a

6  period of supervised release, because it's indicative of a

7  person that isn't all that interested in rehabilitating

8  themselves because he doesn't really think he's done anything

9  wrong.

10        When you get to the point of supervised release, the

11   goal is to give the person a period of time out in the public

12   where they can rehabilitate themselves and get used to living a

13   normal law-abiding life.  The difficulty with that in Mr.

14   Proctor's case is Mr. Proctor has, over the past number of

15   years, indicated little to no willingness whatsoever in

16   rehabilitating himself.  He was given the opportunity on

17   multiple prior occasions to come to grips with his obvious

18  sexual interest in children and set it aside and move on in his

19  life, he's obviously not been able to do that.  He hasn't shown

20  really all that much interest in doing that.

21        We ask simply that you impose a term of supervised

22  release of life on him because the segment of society that he

23  is endangering once he, if he ever gets off of supervised

24  release, is the most vulnerable segment of society.  And I

25  would hate to see Mr. Proctor some day get off of supervised


                              13


1  release, after he serves his 16-and-a-half years and after he

2  serves whatever lesser term of supervised release you might

3  impose, and it would be a tragedy for him to get off of

4  supervised release having learned nothing, as he has learned

5  nothing to date, and victimizing another child.  I just don't

6  think that needs to happen, and I think you have the

7  opportunity to prevent that from happening.  At least,

8  hopefully, go a long way towards preventing that from happening

9  if you impose a term of supervised release of life on him.

10        The only other thing I'll talk about is whether Mr.

11  Proctor should report today.  It's our very strong position

12  that he absolutely should report today because this case has

13  been pending for a very long period of time.  And there can be

14  no question that not only does Mr. Proctor represent an extreme

15  danger to the community, but Mr. Proctor has had a long period

16  of time to get his affairs in order, and he doesn't need any

17  more time.  Whatever affairs he needed to get in order, he

18  should have had that done well in advance of coming into court

19  here today, and we ask that you to make him report to jail

20  today.

21          THE COURT:  All right.  Mr. Patton, do you want to

22  come on up.

23          MR. PATTON:  Your Honor, with regard to the

24  government's argument on life supervised release, I think

25  somewhat of what I'm going to argue here and address that, is


                              14


1   that Mr. Proctor has been on bond for two years.  He was placed

2   on bond on January 12, 2005.  So pretty close to two years to

3   today.  Now, there have been lengthy delays.  But if you recall

4   at the outset of the case, there was a lengthy delay while

5   there was litigation of whether or not the court would order

6    the government to provide a copy of the hard drive directly to

7    defense counsel.  That litigation took months and months and

8    months.  And then some of the delay was due to the computer

9    expert who I had hired dying.  So I had to get another computer

10    expert.  The government continued the sentencing and so on.

11    This isn't just a case that we have been continuing this to try

12    and avoid Mr. Proctor having to deal with this.  It has been

13    legitimate issues that we've had to deal with.  But for the

14    past two years Mr. Proctor has not had a single violation of

15    his bond.  There isn't any report from Pretrial Services that

16    Mr. Proctor hasn't followed the conditions of his bond.  And

17    following his guilty plea --

18        THE COURT:  What were the material conditions of his

19    bond?

20        MR. PATTON:  Initially the conditions were that he

21    report to Pretrial Services weekly.  That he have no contact

22    with minors, except for supervised visits with his children,

23    which have not happened now, because the children, the Office

24    of Children and Youth have taken the children out of the home

25    and the parental rights have been terminated, so that hasn't

15

1   been an issue.  And that he was restricted from computer use in

2   connection with the Internet.  Now, following the guilty plea

3   before your Honor, your Honor changed those conditions and

4   placed Mr. Proctor on home confinement with electronic

5   monitoring.  Since the time of the guilty plea, which I don't

6   have that date in front of me --

7       THE COURT:  I believe it was in March.

8       MR. PATTON:  Since then he's been on home

9   confinement with electronic monitoring, and has not violated

10  the terms of that electronic monitoring.  And has not posed any

11  danger or risk.  Now, Mr. Trabold talked about that Mr. Proctor

12  has had time to get his affairs in order and that is generally

13  true.  But in October of last year Mr. Proctor was diagnosed

14  with deep vein thrombosis.  Which essentially is a blood clot

15  in one of the deep veins in the leg.  And he is being treated

16  by Dr. David Fox.  The standard treatment for that is blood

17  thinners.

18      THE COURT:  Heparin or something?

19      MR. PATTON:  Yes.  He's actually on Coumadin.

20  The concern with having Mr. Proctor report to the Erie County

21  Prison is that Mr. Proctor is on numerous medications.  He has

22   them here with him today, it's a bag full of medications, both

23   for this condition and he's also on mental health medication.

24   And Dr. Fox writes in his letter that it would be better that

25   Mr. Proctor should not -- he says "you should not discontinue

16

1   your Coumadin therapy even for a short period of time as it

2   will place a great risk for further complications to your

3   health."  I will provide a copy of this letter to your Honor.

4         I also spoke with the psychiatrist that Mr. Proctor

5   has been seeing at Stairways Behavioral Health.  He was trying

6   to get a letter to me, but he just had not gotten it to me.

7   One of the medications that Mr. Proctor is on is Effexor.  The

8   psychiatrist tried to explain it to me as to how those two

9   drugs interact.  But the bottom line is they impact on one

10   another, and if you would stop taking the Effexor with the

11   Coumadin, that that's not a good thing.

12         My concern is that the Erie County Prison will not

13   allow Mr. Proctor, under their standard operating procedures,

14   to bring any medication into that facility with him.  Even if

15   he takes that bag with him with all of his prescriptions, they

file:///A|/PROCTSEN.TXT

16  won't let it into the facility.

17       THE COURT:  How is someone medicated there then?

18       MR. PATTON:  Well, they have to wait until they get

19  seen by the doctor at the prison and the doctor comes once a

20  week.  And if you miss him, you have to sit there and wait

21  until he comes again.  Then the doctor has to see the person,

22  decide what prescriptions to do, and then there's a lag time

23  between getting those prescriptions.  So if he is taken into

24  custody today, his Coumadin is going to be -- he's going to

25  stop taking his Coumadin for a period of time, because they


17


1  will not let him bring the medication in.  And his doctors

2  indicated that is potentially very seriously dangerous to Mr.

3  Proctor's health.

4       THE COURT:  Are you saying that if he went over

5  there today, and if the luck of the draw was that the prison

6  physician didn't come around again for another week, he just

7  missed him by a few hours, he'd get no medication over the next

8  week?

9       MR. PATTON:  Yes, that has been my experience with

10   Erie County.  And, look, I'm not trying to say that Erie County

11   is deliberately trying to ignore the medical needs of the

12   inmates, but it's the reality of the situation that they have

13   their doctor come, who's contracted with them, he comes once a

14   week.  Obviously, they have some nursing staff at the facility,

15   but none of those individuals are authorized or qualified to

16   write prescriptions.  And so that if Mr. Proctor is ordered

17   into custody and Erie County Prison does not allow him to bring

18   in his medications, there's going to be a real direct threat to

19   Mr. Proctor's health.  And so if you look at that and decide,

20   all right, is he a flight risk.  Well, as your Honor knows, the

21   parties have reached this agreement as to this agreed sentence

22   sometime ago, over a month ago.  Mr. Proctor has known for over

23   a month that when he came to be sentenced today, he was going

24   to be facing a sentence of 16-and-a-half years.  And he's here.

25   If he was going to try and run or going to try and hide, he

18

1   would have done it.

2           As far as being a danger to the community, if he is

3   in his home being monitored with an electronic monitor and he

4  has shown through the course of almost a year that he will

5  follow those conditions, there are no children in the home, all

6  the children have been taken out of the home by the Office of

7  Children and Youth, that he is not going to present a danger.

8  The danger he presents today is no different than the potential

9  danger that was present from March of last year through today.

10  The conditions of bond that were imposed on him have been

11  scrupulously followed by Mr. Proctor.  And when those

12  conditions are being followed, he doesn't present a danger.

13        The Marshals can ask the Bureau of Prisons for an

14  expedited designation of Mr. Proctor.  To try and speed up the

15  designation process, so that he gets designated as promptly as

16  possible.  Short of that, if you're going to order him into

17  custody, there's really going to be a real risk to his health.

18  And I would move for the admission of Defendant's Exhibit A,

19  which is the letter from Dr. David Fox.

20        THE COURT:  Do you want to bring it up.  All right,

21  I'm going to take a short recess and then come back out.

22        (Recess from 1:58 p.m.; until 2:15 p.m.)

23        THE COURT:  Who's on the line, please, this is Judge

24  McLaughlin?

19

1   the Erie County Prison.

2          THE COURT:  Swear him in, please.

3          DEPUTY CLERK:  Would you please raise your right

4   hand.

5            VINCE KINNANE, WITNESS HEREIN, SWORN

6          THE COURT:  Deputy Warden Kinnane, I don't know if

7   counsel had an opportunity to fill you in on the nature of the

8   problem here.  But we're in the middle of a sentencing hearing

9   and I have a defendant here who has a grab bag of various type

10  of medications.  And I'm informed through a letter by one of

11  his doctors that it is necessary that he continue to receive

12  this medication at regular intervals due to various health

13  concerns.  Mr. Patton, who represents Mr. Proctor, tells me

14  that his concern is although he has a bag of medicine, he will

15  not be permitted to take the medicine if he's incarcerated at

16  the Erie County Jail and may not be able to take the medicine

17  until the next time the prison doctor comes through, which

18  could be as long as a week.  So I thought rather than speculate

19   on it, I would try to get some direction from someone in a

20   position of authority.  What can you tell me about that?

21          DEPUTY WARDEN KINNANE:  Anybody that brings

22   medication into the facility, we would not accept the

23   medication for their use due to the fact we couldn't verify

24   what it was.  However, we would have them sign a release of

25   information form, if they didn't come with a medical transfer


                              20


1    sheet.  Where we would contact the doctor or clinic or whatever

2    facility he was being treated through.  Verify that the

3    medication that he or she claims they're on is what they should

4    be taking.  At that point, if we don't have it in our

5    pharmaceutical stock here, we will have a pharmacy deliver it.

6    I told Mr. Patton just a few minutes ago that in most cases

7    that can happen the same day.  In some extreme cases it may be

8    overnight.  Clearly, with the critical medication, we would

9    make arrangements through Hamot or Saint Vincent's pharmacies

10   or something like that to get it in.

11          THE COURT:  So in this case are you telling me that

12   Mr. Proctor, if he were to report, Mr. Proctor's medical needs,

13  insofar as it relates to medication, could be promptly

14  addressed?

15      DEPUTY WARDEN KINNANE:  Yes, your Honor.

16      THE COURT:  Thank you, very much.  Good-bye, sir.

17      (Discussion held off the record between the

18  Defendant and Defense Counsel.)

19      THE COURT:  Mr. Patton, is there anything else

20  before we proceed to sentencing in the case?

21      MR. PATTON:  No, your Honor.  Defense Exhibit A is

22  the only copy of the letter that I have and if you are going to

23  order Mr. Proctor into custody, I'd ask we get a copy of that

24  to the Marshals so they'll be able to take it.

25      THE COURT:  Are you talking about the letter from


21


1  Dr. Fox?

2      MR. PATTON:  Yes, sir.

3      THE COURT:  We'll give that back to you.  We'll make

4  a copy and make that part of the record.

5      In fashioning a sentence post Booker, I am still, of
                    _____

6  course, required to consider the guideline ranges which are now

7   advisory.  And in addition to the guidelines, I must also

8   consider other factors set forth at 3553(a), which requires the

9   court to impose a sentence that is "sufficient, but not greater

10  than necessary" to comply with the purposes that are set forth

11  in paragraph two.  Section (a)(2) states that those purposes

12  include:

13        To reflect the seriousness of the offense, to

14  promote respect for the law, and to provide just punishment for

15  the offense;

16        To afford adequate deterrence from criminal conduct;

17        To protect the public from further crimes of the

18  defendant; and to provide the defendant with needed educational

19  or vocational training, medical care, etc.

20        Section 3553(a) further directs the sentencing court

21  to consider the nature and circumstances of the offense and the

22  history and characteristics of the defendant; the types of

23  sentences available; the need to avoid unwanted sentencing

24  disparities among defendants with similar records who have been

25  found guilty of similar conduct; and the need to provide

22

1   restitution, if applicable.

2         In fashioning the sentence in this case, I have

3   considered all of those factors.  First, this offense by its

4   nature is very serious.  In addition to other offenses, I note

5   that the defendant does have a previous conviction for indecent

6   assault and corruption of minors involving a sexual assault

7   perpetrated on a 13-year-old girl.  I note, also, there is a

8   corruption of minors conviction involving the supplying of

9   alcohol to a 13-year-old minor.

10         Pursuant to Application Note 2 of United States

11   Sentencing Guidelines 2G2.2:

12         "If the defendant engaged in the sexual abuse or

13         exploitation of a minor at any time, whether or not

14         such abuse or exploitation occurred during the

15         course of the offense or resulted in a conviction

16         for the conduct, and Subsection (b)(4) does not

17         apply, an upward departure may be warranted."

18         Here I find that a three-level upward departure is

19   warranted beyond the advisory guideline range, given the

20   previously-described incident of assault and, particularly,

21   given its egregious nature.

22          The record reflects that this defendant does have a

23   long history of preying on children.  The protection of the

24   public from further crimes of this defendant, given his record,

25   is in my view a major consideration in fashioning this


                                23


1   sentence.  As well as the need to provide just punishment.

2          In fashioning this sentence, I have also considered

3   the importance of its deterrent effect.

4          Insofar as it relates to the question of supervised

5   release, given this defendant's criminal history, which

6   includes in part sexually assaultive behavior against minors,

7   and an inability to reform his conduct, I am unwilling to run a

8   risk with this defendant relative to the issue of supervised

9   release.

10          Would you stand for sentencing, please.  Pursuant to

11   the Sentencing Reform Act of 1984, and in part supported by the

12   provisions of United States Sentencing Guideline 2G2.2,

13   Application Note 2, it's the judgment of this court that the

14   defendant, Keith Allen Proctor, is hereby committed to the

15   custody of the Bureau of Prisons to be imprisoned for a term of

16  198 months.  This term consists of 198 months at each of Counts

17  One and Two, and a term of 120 months at Count Three, to be

18  served concurrently.

19        Upon release from imprisonment, the defendant shall

20  be placed on supervised release for a term of life.  This term

21  consists of terms of life on each of Counts One, Two and Three,

22  all such terms to run concurrently.

23        Within 72 hours of release from the custody of the

24  Bureau of Prisons, the defendant shall report in person to the

25  Probation Office in the district to which this defendant is


                              24


1  released.

2        While on supervised release, the defendant shall not

3  commit another federal, state or local crime, shall comply with

4  the standard conditions of supervision recommended by the

5  Sentencing Commission and adopted by this court, and shall

6  comply with the following additional conditions:

7        The defendant shall not illegally possess a

8  controlled substance.

9        The defendant shall not possess a firearm or

10  destructive device.

11      The defendant shall participate in a program of

12  testing and, if necessary, treatment for substance abuse as

13  directed by the probation officer, until such time as the

14  defendant is released from the program by the probation

15  officer.  Further, the defendant shall be required to

16  contribute to the costs of services for any such treatment in

17  an amount determined by the probation officer, but not to

18  exceed the actual cost.  The defendant shall submit to one drug

19  urinalysis within 15 days after being placed on supervision and

20  at least two periodic tests thereafter.

21      The defendant shall participate in a mental health

22  treatment program and/or sex offender treatment program as

23  approved and directed by the probation officer.  The defendant

24  shall abide by all program rules, requirements and conditions

25  of the sex offender treatment program, including submission to

25

1  polygraph testing, to determine if he is in compliance with the

2  conditions of release.

3      In accordance with Title 18, U.S.C. Section 3583(d)

4    and Section 4042(c)(4), the defendant shall report the address

5    where he will reside and any subsequent change of address to

6    the probation officer responsible for the defendant's

7    supervision and, further, the defendant shall register as a

8    convicted sex offender in any state where he resides, is

9    employed, carries on a vocation, or is a student.

10       The defendant shall not possess any materials,

11    including pictures, photographs, books, writings, drawings,

12    videos or video games depicting and/or describing child

13    pornography as that term is defined at 18 U.S.C. Section

14    2256(2).

15       The defendant shall not possess any materials,

16    including pictures, photographs, books, writings, drawings,

17    videos or video games depicting and/or describing child

18    pornography as defined at 18 U.S.C. 2256(8).

19       The defendant shall not associate with children

20    under the age of 18, except in the presence of a responsible

21    adult who is aware of the nature of the defendant's background

22    and current offense and who has been approved by the probation

23    officer.

24       The defendant shall consent to the U.S. Probation

25    Office conducting periodic unannounced examinations of his

26

1   computer system, which may include retrieval and copying of all

2   memory from hardware/software and/or removal of such system for

3   the purpose of conducting a more thorough inspection and will

4   consent to having installed on his computer, at his expense,

5   any hardware/software to monitor his computer use or prevent

6   access to particular materials.  The defendant shall consent to

7   periodic inspection of any such installed hardware/software to

8   insure that it is functioning properly.

9        The defendant shall provide the U.S. Probation

10  Office with accurate information about his entire computer

11  system (hardware/software), all passwords used by him, and his

12  Internet service provider and will abide by the rules of the

13  Computer Restriction and Monitoring Program.

14       The defendant shall submit his person, residence,

15  place of business, computer and/or vehicle to a warrantless

16  search conducted and controlled by the United States Probation

17  Office at a reasonable time and in a reasonable manner, based

18  upon a reasonable suspicion of contraband or evidence of a

19  violation of a condition of release.  Failure to submit to a

20  search may be grounds for revocation.  The defendant shall

21  inform any other residents that the premises and his computer

22  may be subject to a search pursuant to this condition.

23       The defendant is prohibited from operating Internet

24  Web sites containing child pornographic materials.

25       The defendant shall cooperate in the collection of

27

1  DNA as may be directed by the probation officer.

2       It is further ordered that the defendant shall pay

3  to the United States a special assessment of $300, which shall

4  be paid to the United States District Court Clerk forthwith.

5       I find that the defendant does not have the ability

6  to pay a fine, so I will waive a fine in this case.

7       Mr. Proctor, do you understand that you have the

8  right to appeal this sentence that I imposed here today, but if

9  you choose to do so, you must do so within 10 days; do you

10  understand that, sir?

11       THE DEFENDANT:  Yes.

12       THE COURT:  All right.  Particularly given, in light

13  of the conversation I had with the Deputy Warden and given the

14   length of time that this case has been pending, I am going to

15   direct that the defendant be committed to the custody of the

16   United States Marshals at this time.

17        MR. PATTON:  Your Honor, so the record is clear, I

18   would object to the condition that Mr. Proctor consent to a

19   search, that his failure to consent could be a basis for

20   revoking.

21        THE COURT:  That is noted.  In the event it wasn't

22   picked up, I'll put it on the record now to make it clear.

23   Let me make a recommendation that Mr. Proctor be incarcerated

24   as close to Erie, Pennsylvania as is practicable.

25        MR. TRABOLD:  Your Honor, just so the record is

28

1    clear, I want to make sure that the record reflects that I

2    moved for the admission of Government Exhibit 1.

3         THE COURT:  You did and it's admitted.  We're

4    adjourned.

5

6         (Whereupon, at 2:30 p.m., the Sentencing proceedings

7    were concluded.)

8

9         - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

29

1        C E R T I F I C A T E

2

3

4

5    I, Ronald J. Bench, certify that the foregoing is a

6  correct transcript from the record of proceedings in the

7  above-entitled matter.

8

9

10

11

12  _____

13  Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25